STROOCK & STROOCK & LAVAN LLP
LISA M. SIMONETTI (State Bar No. 165996)
MARCOS D. SASSO (State Bar No. 228905)
A. R. KACHADOORIAN (State Bar No. 240601)
2029 Century Park East
Los Angeles, CA 90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959

Attorneys for Defendant
CITIBANK (SOUTH DAKOTA), N.A.,
erroneously sued as CITI BANK

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEOFFREY D. LEVINE,<br><br>Plaintiff,<br><br>vs.<br><br>CITI BANK,<br><br>Defendant. | **Case No. 07 CV 2032 WQH CAB**<br><br>[Assigned to the Honorable William Q. Hayes, Courtroom 4]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT CITIBANK (SOUTH DAKOTA), N.A., ERRONEOUSLY SUED AS CITI BANK, TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**<u>Hearing:</u>**<br>**Date: December 3, 2007**<br>**Time: 11:00 a.m.**<br>**Ctrm: 4**<br><br>**NO ORAL ARGUMENT REQUIRED**<br>**NO APPEARANCES REQUIRED**<br><br>Action Filed: September 21, 2007<br><br>[Notice of Motion and Motion filed and [Proposed] Order lodged concurrently] |

TABLE OF CONTENTS

Page(s)

I. INTRODUCTION AND FACTUAL BACKGROUND ..... 1

II. ARGUMENT ..... 2

A. Legal Standard On A Motion To Dismiss ..... 2

B. Plaintiff Fails To Allege Facts Sufficient To State A Claim For Violation Of The FCRA.. ..... 2

C. The National Bank Act Bars Plaintiff's Challenge To Citibank's Interest Rate. ..... 5

1. Federal Preemption Under The NBA ..... 6

2. The NBA Specifically Forbids Plaintiff's State-Law Claim For Usury. ..... 7

3. Citibank's Interest Rate Is Proper Under The NBA And South Dakota Law ..... 9

III. CONCLUSION ..... 10

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

# TABLE OF AUTHORITIES

## CASES

Page(s)


Aklagi v. Nationscredit Finance Services Corp., 196 F. Supp. 2d 1186 (D. Kan. 2002) ....4

Bank of America v. San Francisco, 309 F.3d 551 (9th Cir. 2002) ....6

Bank One, N.A. v. Colley, 294 F. Supp. 2d 864 (M.D.La. 2003) ....4

Barnett Bank of Marion County v. Nelson, 517 U.S. 25, 116 S. Ct. 1103, 134 L. Ed. 2d 237 (1996) ....6

Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, --- L. Ed. 2d ---- (May 21, 2007) ....2

Beneficial National Bank v. Anderson, 539 U.S. 1, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003) ....6, 7, 8

Carney v. Experian Information Solutions, Inc., 57 F. Supp. 2d 496 (W.D. Tenn. 1999) ....3, 4

Citibank, South Dakota, N.A. v. Lackey, No. 04CVD2124, 2006 WL 4512190 (N.C. Dist. Ct. Oct 16, 2006) ....9

Citibank (South Dakota), N.A. v. Manger, No. CV054001358S, 2006 WL 1644595 (Conn. Super. Ct. May 25, 2006) ....9

First Nat'l Bank v. California, 262 U.S. 366, 43 S. Ct. 602, 67 L. Ed. 1030 (1923) ....6

Fisher v. First National Bank, 548 F.2d 255 (8th Cir. 1977) ....9

Gibbs v. SLM Corp., 336 F. Supp. 2d 1 (D. Mass. 2004) ....2, 3, 4

Gonzalez v Ocwen Fin. Servs., Inc., No. C0304592 HRL, 2003 WL 23939563 (N.D. Cal. Dec. 2, 2003) ....3

Gorman v. Wolpoff & Abramson, LLP, 370 F. Supp. 2d 1005 (N.D. Cal. 2005) ....3, 4

Gorman v. Wolpoff & Abramson, LLP, 435 F. Supp. 2d 1004 (N.D. Cal. 2006) ....3, 4

Haseltine v. Central Bank of Springfield, 183 U.S. 132, 22 S. Ct. 50, 46 L. Ed. 118 (1901) ....8

Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139 (N.D. Cal. 2005) ....3, 5


STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Kacludis v. GTE Sprint Commc'ns Corp., 806 F. Supp. 866 (N.D. Cal. 1992) .......... 2

M. Nahas & Co. v. First National Bank, , 930 F.2d 608 (8th Cir. 1991) .......... 7

Marquette National Bank v. First of Omaha Serv. Corp., 439 U.S. 299, 99 S. Ct. 540, 58 L. Ed. 2d 534 (1978) .......... 6, 7, 8, 9

Millett v. Ford Motor Credit Co., No 04-2450-CM, 2006 WL 1301160 (D.Kan. May 9, 2006) .......... 4

Moline v. Trans Union LLC, No. 03 C 1376, 2003 WL 21878728 (N.D. Ill. Aug. 7, 2003 .......... 4

Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002) .......... 3

Nelson v. Citibank, N.A., 794 F. Supp. 312 (D.Minn. 1992) .......... 7, 9

North Star International v. Arizona Corp. Commission, 720 F.2d 578 (9th Cir. 1983) .......... 2

Parks Sch. of Bus. v. Symington, 51 F.3d 1480 (9th Cir. 1995) .......... 2

Peasley v. Verizon Wireless LLC, 364 F. Supp. 2d 1198 (S.D. Cal. 2005) .......... 3

Phipps v. Guaranty National Bank of Tallahassee, No. 03-420-CV-W-GAF, 2003 WL. 22149646 (W.D. Mo. Sept. 17, 2003) .......... 8

Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530 (9th Cir. 1984) .......... 2

Roe III v. Unocal Corp., 70 F. Supp. 2d 1073 (C.D. Cal. 1999) .......... 2

Safeco Insurance Co. of America v. Burr, 127 S. Ct. 2201 (U.S. 2007) .......... 5

Scott v. Amex/Centurion S & T, No. 3:01-CV-1594-H, 2001 WL 1645362 (N.D. Tex. Dec. 18, 2001) .......... 4

Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 116 S. Ct. 1730, 135 L. Ed. 2d 25 (1996) .......... 5, 7, 8, 9

Tiffany v. National Bank of Missouri, 85 U.S. 409 (1874) .......... 5

Transphase System, Inc. v. S. Cal. Edison Co., 839 F. Supp. 711 (C.D. Cal. 1993) .......... 2

Vazquez-Garcia v. Trans Union De Puerto Rico, 222 F. Supp. 2d 150 (D.P.R. 2002) .......... 2

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

222 F. Supp. 2d 150 (D.P.R. 2002) .......... 2

Western Mining Council v. Watt,
643 F.2d 618 (9th Cir. 1981) .......... 2

Whisenant v. First National Bank & Trust Co.,
258 F. Supp. 2d 1312 (N.D. Okla. 2003) .......... 3

Zager v. Deaton,
No. 1-03-1153, 2005 WL 2008432 (W.D. Tenn. Aug. 16, 2005) .......... 4

## STATUTES, RULES AND REGULATIONS

12 U.S.C. § 24 .......... 6

12 U.S.C. § 85 .......... 6, 7, 9

12 U.S.C. § 86 .......... 6, 7, 9

12 U.S.C. § 93a .......... 6

15 U.S.C. § 1681n .......... 3

15 U.S.C. § 1681o .......... 3

15 U.S.C. § 1681s-2 .......... 2, 3, 4

12 C.F.R. § 7.4008 .......... 6, 7

12 C.F.R. § 7.4009 .......... 6

S.D. Codified Laws § 51A-12-12 .......... 9

S.D. Codified Laws § 54-3-1.1 .......... 9

Fed. R. Civ. P. 8 .......... 4

Fed. R. Civ. P. 12 .......... 2

## OTHER AUTHORITIES

OCC Final Rule, 69 Fed. Reg. 1904, 1904-05 (Jan. 13, 2004) .......... 7

OCC Interpretive Letter No. 452 (Apr. 11, 1989), 8 No. 1 OCC Q.J. 77, 1989 WL. 451256 .......... 5

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Defendant Citibank (South Dakota), N.A., erroneously sued as "Citi Bank" ("Citibank"), hereby submits its Memorandum of Points and Authorities in Support of its Motion to Dismiss the Complaint filed by plaintiff Geoffrey D. Levine ("Plaintiff").

## I. INTRODUCTION AND FACTUAL BACKGROUND

On September 21, 2007, Plaintiff filed the Claim and Order (the "Complaint") to proceed in the small claims division of the San Diego County Superior Court. Citibank timely removed the case to this Court on October 19, 2007. To the extent one can even discern the gravamen of Plaintiff's claims (a nearly impossible task given the vagueness of the Complaint), Plaintiff seemingly asserts two claims against Citibank, for: (1) unspecified, unsubstantiated violations of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA"); and (2) usury based upon the interest rate allegedly assessed on Plaintiff's credit card account. Plaintiff alleges that Citibank owes him $7,500 "due to multiple violations of the [FCRA], deliberate misbilling at a userous [sic] 32% APR, and punitive damages." Complaint, SC-100, Item 3(a), (b). Plaintiff also alleges that he "hop[es] the court will find punitive damages equal to the defendant's arrogance." Id., SC-100, Item 3(c). Put simply, Plaintiff's claims are frivolous and fail as a matter of law.

First, Plaintiff does not allege facts sufficient to state a claim against Citibank under the FCRA. Specifically, Plaintiff does not allege facts regarding any conduct by Citibank constituting an alleged FCRA violation and he does not identify any particular provision of the FCRA that Citibank allegedly violated. Nor does he allege facts establishing that Citibank's conduct was "willful" under the FCRA or how he arrived at a claim for $7,500.

Second, Plaintiff's usury claim, which arises from the allegation that his account was purportedly charged a 32% interest rate, fails pursuant to federal preemption under the National Bank Act, 12 U.S.C. § 21, et seq. (the "NBA"). The NBA completely preempts any state-law usury claim and, thus, Plaintiff's claim is barred. Plaintiff does not allege a federal usury claim under the NBA, nor could he because Citibank's interest rate is proper under the NBA.

Accordingly, the Court should grant Citibank's Motion and dismiss the Complaint with prejudice and without leave to amend.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

## II. ARGUMENT

### A. Legal Standard On A Motion To Dismiss

A motion to dismiss for failure to state a claim tests the complaint's legal sufficiency. Fed. R. Civ. P. 12(b)(6); North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983); Roe III v. Unocal Corp., 70 F. Supp. 2d 1073, 1075 (C.D. Cal. 1999). ). "A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable theory." Kacludis v. GTE Sprint Commc'ns Corp., 806 F. Supp. 866, 870 (N.D. Cal. 1992) (quoting Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)). As recently stated by the United States Supreme Court, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964-65, 1968, --- L. Ed. 2d ---- (May 21, 2007) (a pleading cannot avoid dismissal by "le[aving] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery"). While the court must take as true all allegations of material fact in the light most favorable to the non-moving party (Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995), a court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Transphase Sys., Inc. v. S. Cal. Edison Co., 839 F. Supp. 711, 718 (C.D. Cal. 1993) (a court does not "need to accept as true conclusory allegations . . . or unreasonable inferences").

### B. Plaintiff Fails To Allege Facts Sufficient To State A Claim For Violation Of The FCRA.

The FCRA exclusively regulates the reporting and use of credit information. See 15 U.S.C. § 1681, et seq. There are basically three types of entities/persons that interplay in FCRA lawsuits: (1) credit reporting agencies (e.g., Trans Union, Experian and Equifax ("CRAs")); (2) users of information contained in consumer reports (e.g., creditors, employers, insurance companies); and (3) the furnishers of information to CRAs (e.g., Citibank here). See Vazquez-Garcia v. Trans Union De Puerto Rico, 222 F. Supp. 2d 150, 153-54 (D.P.R. 2002); Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 10-11 (D. Mass. 2004), aff'd (1st Cir. Aug. 23 2005). Generally speaking, 15 U.S.C. §

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1681s-2 identifies two sets of duties that are imposed upon furnishers: (1) the duty to provide accurate information, which is set forth in § 1681s-2(a); and (2) the duty to investigate disputes on consumer credit reports that are received by the furnisher from the CRAs, which is set forth in § 1681s-2(b). See Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999); Whisenant v. First National Bank & Trust Co., 258 F. Supp. 2d 1312, 1316 (N.D. Okla. 2003).[1]

On the one hand, and critically, there is no private right of action under § 1681-2(a) for alleged furnishing of inaccurate information. See Gorman v. Wolpoff & Abramson, LLP, 370 F. Supp. 2d 1005, 1012 (N.D. Cal. 2005); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002); Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1146 (N.D. Cal. 2005); Gibbs, 336 F. Supp. 2d at 11 ("courts have consistently held that there is no private action for violations of § 1681s-2(a)"). On other hand, Section 1681s-2(b) provides that, upon receiving a dispute of inaccuracy from a CRA, a furnisher is obligated to conduct a reasonable investigation of the such dispute, report its results to the CRA, and modify or delete incorrect information, if any. 15 U.S.C. § 1681s-2(b). "Courts have consistently held that for the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer." Peasley v. Verizon Wireless LLC, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005) (complaint failed to state a claim for violation of § 1681s-2(b) where plaintiff did not allege that the defendant credit furnisher was ever notified by a CRA and instead alleged that the plaintiff notified the credit furnisher directly); accord Whisenant, 258 F. Supp. 2d at 1317 (as a matter of law, defendant violated no duty under the FCRA where defendant knew about he plaintiffs' dispute but did not show that CRAs notified furnisher of the dispute); Gonzalez v Ocwen Fin. Servs., Inc., No. C0304592 HRL, 2003 WL 23939563, at *2 (N.D. Cal. Dec. 2, 2003) (complaint failed to state FCRA claim where plaintiff failed to allege that furnisher received notice of his dispute from a CRA); Gorman v. Wolpoff &

---

[1] The FCRA provides for two types of civil claims against the furnishers of credit information, both of which require the condition precedent of the claimant disputing the reporting directly to the CRAs: (1) negligent claims pursuant to 15 U.S.C. § 1681o; and (2) willful claims, pursuant to 15 U.S.C. § 1681n. Obviously, "willful" claims under the FCRA require factual allegations of egregious conduct on a heightened level.

Abramson, LLP, 435 F. Supp. 2d 1004, 1009 (N.D. Cal. 2006) (same); Gibbs, 336 F. Supp. 2d 11-12.(same).[2]

Here, Plaintiff fails to state a claim against Citibank under the FCRA for a number of reasons.

First, even if Plaintiff were to identify an inaccuracy in the reporting of his account (which he cannot), Plaintiff cannot state a claim against Citibank under Section 1681-2(a) for alleged furnishing of inaccurate information as a matter of law.

Second, Plaintiff fails to allege the threshold facts necessary to state a Section 1681-2(b) claim. Indeed, Plaintiff fails to allege any facts establishing what inaccurate information was allegedly disputed, that he in fact notified a CRA of such "dispute," that Citibank was notified by the CRAs with respect to the purported "dispute" or that Citibank failed reasonably and timely to investigate such "dispute." As a result, Plaintiff fails to state a claim. The pleading of these predicate facts are essential to support any claim under Section 1681-2(b) against a credit information furnisher such as Citibank. See, e.g., Aklagi v. Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002) ("[U]nder the plain language of the statute, the duty of a furnisher of credit information to investigate a credit dispute is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency, not just the consumer.").

Third, the allegations are too vague even to begin to state any FCRA claim. See, e.g., Gorman, 370 F. Supp. 2d at 1012 (dismissing FCRA claim where plaintiff's allegations consisted of "non-descriptive phrases and legal conclusions"). Even under the liberal standards of Federal Rule of Civil Procedure 8, the Complaint's vague and conclusory allegation of "multiple violations of the [FCRA]" (Complaint, SC-100, Item 3(a)), does not allege facts sufficient to put Citibank on notice as to the claims presented. Put simply, Plaintiff pleads no facts as to conduct by Citibank in connection with the reporting of his Account and leaves Citibank to guess as to what he claims it did wrong.

---

[2] Accord Moline v. Trans Union LLC, No. 03 C 1376, 2003 WL 21878728, at *1 (N.D. Ill. Aug. 7, 2003); Carney, 57 F. Supp. 2d at 502; Scott v. Amex/Centurion S & T, No. 3:01-CV-1594-H, 2001 WL 1645362, at *4 (N.D. Tex. Dec. 18, 2001); Millett v. Ford Motor Credit Co., No 04-2450-CM, 2006 WL 1301160, at *3, *4 (D.Kan. May 9, 2006); Zager v. Deaton, No. 1-03-1153, 2005 WL 2008432, at *5, *6 (W.D. Tenn. Aug. 16, 2005); Bank One, N.A. v. Colley, 294 F. Supp. 2d 864, 870 (M.D.La. 2003).



STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Finally, Plaintiff does not, and cannot, allege any facts establishing that Citibank's conduct was "willful" under the FCRA. In Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201 (U.S. 2007), the United States Supreme Court recognized that "willfulness" under the FCRA encompasses conduct in "reckless disregard" of the law, and is "understood . . . as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. at 2215 (citations omitted). Plaintiff fails to allege (and cannot allege) that he disputed his account with the CRAs and fails to allege facts demonstrating that Citibank "willfully" disregarded its investigation obligations under the FCRA. See Howard, 371 F. Supp. 2d at 1143 (dismissing FCRA "willful" claim where plaintiff's allegations contained only a conclusory statement). Instead, the Complaint consists only of cursory legal conclusions and nothing more, i.e., that there have been "multiple violations of the [FCRA]" (Complaint, SC-100, Item 3). Such conclusory allegations do not satisfy the rigorous "willful" standard articulated in Safeco.

Accordingly, the Complaint fails to state any valid claim under the FCRA and, therefore, should be dismissed.

**C. The National Bank Act Bars Plaintiff's Challenge To Citibank's Interest Rate.**

It is firmly established that the National Bank Act specifically forbids state-law claims for usury, such as Plaintiff's claim here. Citibank is a national bank located in South Dakota, and existing pursuant to the NBA. See, e.g., Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 737-38, 744, 116 S. Ct. 1730, 135 L. Ed. 2d 25 (1996) (recognizing that Citibank is a national bank and its home state is South Dakota); OCC Interpretive Letter No. 452 (Apr. 11, 1989), 8 No. 1 OCC Q.J. 77, 1989 WL 451256, at *1 (confirming that Citibank's home state is South Dakota and that the laws of South Dakota determine the applicable interest charges for Citibank). As noted by the United States Supreme Court, "National banks have been National favorites. They were established for the purpose, in part, of providing a currency for the whole country ... It could not have been intended, therefore, to expose them to the hazard of unfriendly legislation by the States ...." Tiffany v. National Bank of Missouri, 85 U.S. 409, 413 (1874).

Here, Plaintiff attempts to use state law to dictate the terms by which Citibank may lend money to its credit card customers. The NBA prohibits the use of state law to regulate interest

charges, and provides its own exclusive cause of action through which to challenge the interest practices of, and interest rates charged by, a national bank. The NBA expressly and completely preempts Plaintiff's usury claim, such that it is barred and must be dismissed. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 11, 123 S. Ct. 2058, 2064, 156 L. Ed. 2d 1 (2003); 12 U.S.C. §§ 85, 86.

**1. Federal Preemption Under The NBA.**

The NBA was enacted to establish a national banking system, free from excessive state regulation. See Marquette Nat'l Bank v. First of Omaha Serv. Corp., 439 U.S. 299, 314-15, 99 S. Ct. 540, 58 L. Ed. 2d 534 (1978). Consistent with general conflict-preemption standards, "[s]tate regulation of banking is permissible when it 'does not prevent or significantly interfere with the national bank's exercise of its powers.'" Bank of America v. San Francisco, 309 F.3d 551, 558-59 (9th Cir. 2002) (quoting Barnett Bank of Marion County v. Nelson, 517 U.S. 25, 33, 116 S. Ct. 1103, 134 L. Ed. 2d 237 (1996)). Conversely, "[s]tate attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the [NBA], or impair the efficiency of national banks to discharge their duties." Id. at 561 (citing First Nat'l Bank v. California, 262 U.S. 366, 369, 43 S. Ct. 602, 67 L. Ed. 1030 (1923)). The NBA expressly authorizes national banks "to exercise . . . all such incidental powers as shall be necessary to carry on the business of banking," including "by loaning money on personal security." 12 U.S.C. § 24 (Seventh). The Office of the Comptroller of Currency ("OCC"), which is empowered by Congress to regulate national banks, may "authorize additional activities if encompassed by a reasonable interpretation of § 24 (Seventh)." Bank of America, 309 F.3d at 562 (citation omitted); 12 U.S.C. § 93a.

Further confirming the preemption standards applicable to national banks, the OCC recently published a Final Rule amending the federal regulations addressing preemption under the NBA. The amended regulations identify types of state laws that are preempted with respect to national banks' lending and other operations. See 12 C.F.R § 7.4008 (regarding non-real estate lending activities); § 7.4009 (regarding other federally-authorized activities of national banks); see also

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

OCC Final Rule, 69 Fed. Reg. 1904, 1904-05 (Jan. 13, 2004). With respect to non real-estate lending activities, 12 C.F.R. § 7.4008 provides, in pertinent part, as follows:

> (a) Authority of national banks. A national bank may make, sell, purchase, participate in, or otherwise deal in loans and interests in loans that are not secured by liens on, or interests in, real estate, subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and any other applicable Federal law.
>
> * * *
>
> (d) Applicability of state law.
>
> (1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.
>
> (2) A national bank may make non-real estate loans without regard to state law limitations concerning:
>
> * * *
>
> (x) Rates of interest on loans.

12 C.F.R. § 7.4008 (footnotes omitted).

**2. The NBA Specifically Forbids Plaintiff's State-Law Claim For Usury.**

Section 30 of the NBA, codified at 12 U.S.C. § 85, provides, in pertinent part, that a national bank may charge interest on loans "at the rate allowed by the laws of the State ... where the bank is located." 12 U.S.C. § 85. 12 U.S.C. § 86 provides a remedy for violation of Section 85, stating that "[t]he taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title . . . shall be deemed a forfeiture of the entire interest which the . . . evidence of debt carries with it, or which has been agreed to be paid thereon." Sections 85 and 86 of the NBA exclusively govern the charging of interest by a national bank such as Citibank. See, e.g., Beneficial, 539 U.S. at 10 (confirming the "longstanding and consistent construction of the National Bank Act[, 12 U.S.C. §§ 85 and 86,] as providing an exclusive federal cause of action for usury against national banks"); Smiley, 517 U.S. at 744 ("There is no doubt that § 85 pre-empts state law."); Marquette, 439 U.S. at 308 ("[T]he interest rate that [a national bank] may charge in its [credit card] program is thus governed by federal law."); M. Nahas & Co. v. First National Bank, 930 F.2d 608, 610 (8th Cir. 1991); Nelson v. Citibank, N.A., 794 F. Supp. 312, 316-20 (D.Minn. 1992).

In Beneficial National Bank v. Anderson, the United States Supreme Court confirmed its "longstanding and consistent construction of the National Bank Act, [12 U.S.C. §§ 85 and 86,] as



STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

providing an exclusive federal cause of action for usury against national banks[.]" 539 U.S. at 11. "In actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. … Because [Sections] 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank." Id. at 11; see also Smiley, 517 U.S. at 744 ("[T]here is no doubt that § 85 pre-empts state law."); Marquette, 439 U.S. at 308 ("The interest rate that [a national bank] may charge in its [credit card] program is thus governed by federal law."); Haseltine v. Central Bank of Springfield, 183 U.S. 132, 134, 22 S. Ct. 50, 46 L. Ed. 118 (1901) ("[T]he definition of usury and the penalties affixed thereto must be determined by the National Banking Act and not by the law of the State.").

Recognizing these well established preemption principles, courts routinely dismiss claims of usury asserted against national banks. For example, in Phipps v. Guaranty National Bank of Tallahassee, No. 03-420-CV-W-GAF, 2003 WL 22149646 (W.D. Mo. Sept. 17, 2003), the court dismissed plaintiffs' claim challenging interest charged by a national bank. In dismissing plaintiffs' claims, the court offered the following short, but insightful, analysis:

> Having found that the [plaintiffs] are asserting a claim of unlawful interest against [the national bank], and having further found that the United States Supreme Court has stated there is no such thing as a state law claim of usury against a national bank, it is a short step to conclude that the [plaintiffs'] complaint should be dismissed. The [plaintiffs'] complaint attempts to state what does not exist, to wit: a usurious claim against a national bank premised on Missouri law. This is not a claim for which relief may be granted. Accordingly, [defendants'] Motions to Dismiss are GRANTED.

Id., 2003 WL 22149646, at *7.

In the Complaint, Plaintiff expressly challenges the "userous [sic] 32% APR" that Citibank purportedly assessed on his Account. Complaint, SC-100, Item 3(a). These allegations are squarely within the scope of the NBA, and no such state-law claim can be asserted. The NBA exclusively and completely governs the interest charged by national banks and, thus, forbids Plaintiff from challenging the interest rate charged by Citibank under California law.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

**3. Citibank's Interest Rate Is Proper Under The NBA And South Dakota Law.**

The NBA does not prescribe or prohibit a particular amount of interest. Instead, the NBA provides that the law of the state in which the national bank is located dictates the propriety of the interest charged. 12 U.S.C. §§ 85, 86. Citibank is located in South Dakota and therefore South Dakota law regulates the amount of interest that Citibank can charge. See 12 U.S.C. § 85; Marquette, 439 U.S. at 308-14 (stating that Section 85 "plainly provides that a national bank may charge interest 'on any loan' at the rate allowed by the laws of the State in which the bank is 'located'"); Smiley, 517 U.S. at 737-38; Nelson v. Citibank, N.A., 794 F. Supp. at 316-20; Fisher v. First Nat'l Bank, 548 F.2d 255, 257-59 (8th Cir. 1977) (concluding that charges assessed by national bank on credit cardholder were permissible under law of state in which bank was located); S.D. Codified Laws § 51A-12-12 (providing that a "revolving loan account arrangement between a bank located in the state of South Dakota and a debtor shall be governed by the laws of the state of South Dakota").[3] South Dakota does not place any restrictions on the amount of interest to be charged on credit card accounts, but rather, allows interest to be assessed as agreed by the parties. See S.D. Codified Laws § 54-3-1.1 (providing that "there is no maximum interest rate or charge, or usury rate restriction between or among persons, corporations, …or any other entities if they establish the interest rate or charge by written agreement"). The card agreements governing Citibank credit card accounts (including Plaintiff's account) includes a choice of law provision providing that the law of South Dakota governs the parties' credit relationship.

Citibank's interest rate comports with the NBA and South Dakota law. Therefore, the interest that Citibank allegedly assessed on Plaintiff's account is not and cannot be determined to be usurious as a matter of law. Pursuant to Sections 85 and 86 of the NBA, Plaintiff's claim cannot be pursued.

---

[3] See also Citibank (South Dakota), N.A. v. Manger, No. CV054001358S, 2006 WL 1644595, at *2 (Conn. Super. Ct. May 25, 2006) (reasoning that "[u]nder federal law, a national bank may charge interest and … at an interest rate allowed by its home state"); Citibank, South Dakota, N.A. v. Lackey, NO. 04CVD2124, 2006 WL 4512190 (N.C. Dist. Ct. Oct 16, 2006) (same).

## III. CONCLUSION

For the foregoing reasons, Citibank respectfully requests that the Court grant its Motion and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated: October 25, 2007

STROOCK & STROOCK & LAVAN LLP
LISA M. SIMONETTI
MARCOS D. SASSO
A. R. KACHADOORIAN

By: ______________________

Attorneys for Defendant
CITIBANK (SOUTH DAKOTA), N.A., erroneously sued as CITI BANK

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss
COUNTY OF SAN DIEGO )

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party to the within action. My business address is: 2029 Century Park East, Los Angeles, CA 90067-3086.

On October 25, 2007, I served the foregoing document(s) described as: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT CITIBANK (SOUTH DAKOTA), N.A., ERRONEOUSLY SUED AS CITI BANK, TO DISMISS PLAINTIFF'S COMPLAINT** on the interested parties in this action as follows:

Geoffrey D. Levine (Pro Per)
2871 Madison Avenue
San Diego, CA 92116
Tel: (619) 261-6343

☒ **(VIA U.S. MAIL)** In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on this same date following ordinary business practices, addressed as set forth above.

☐ **(VIA ELECTRONIC CASE FILING)** I filed electronically the documents listed above, using the [court name]'s electronic case filing service, on [date]. Counsel of record are registered to file electronically with this Court, and receive copies of the documents via e-mail from the Court to confirm filing.

☐ **(VIA FACSIMILE)** By causing such document to be delivered to the office of the addressee via facsimile.

☐ **(VIA OVERNIGHT DELIVERY)** By causing the document(s), in a sealed envelope, to be delivered to the office of the addressee(s) at the address(es) set forth above by overnight delivery via Federal Express, or by a similar overnight delivery service.

I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 25, 2007, at Los Angeles, California.

Gayle Grace
[Type or Print Name]

Gayle Grace
[Signature]